**RICHARDS LEGAL GROUP**
Richard L. Richards, Esq.
Angelica D. Zolnierowicz, Esq.
55 Miracle Mile, Suite 310
Coral Gables, FL 33134
Email: rrichards@richpa.net
Telephone: (305) 448-2228

**SCOGGINS LAW OFFICE, LLC**
Mark Scoggins, Esq.
P.O. Box 501127
Saipan, MP 96950
Email: markascoggins@gmail.com
Telephone: (670) 234-7455

*Attorneys for Plaintiff*

F I L E D
Clerk
District Court

JUN 25 2024

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

STAR MARIANAS AIR  INC.                    ]     CIVIL ACTION NO. 24-**0 0 0 1 0**
                                           ]
                   Plaintiff,              ]
     vs.                                   ]     **PLAINTIFF'S COMPLAINT**
                                           ]     **1. VIOLATIONS OF THE SHERMAN ACT**
SOUTHERN AIRWAYS EXPRESS                    ]
LLC, MARIANAS PACIFIC EXPRESS               ]
LLC d/b/a MARIA   AS SOUTHERN               ]
AIRWAYS, and KEITH STEWART,                 ]
                                           ]
                   Defendants.             ]

**COMPLAINT**

   Plaintiff, STAR MARIANAS AIR  INC. ("Star Marianas" or "Plaintiff"), by and through

undersigned counsel, hereby brings this Complaint, against SOUTHERN AIRWAYS EXPRESS,

*ORIGINAL*

LLC ("Southern Airways Express"), MARIANAS PACIFIC EXPRESS LLC d/b/a MARIANAS SOUTHERN AIRWAYS ("Marianas Southern Airways"), and KEITH STEWART ("Stewart"), an individual, (collectively referred to as "Defendants") and in support thereof alleges as follows:

## THE PARTIES

1.      Plaintiff Star Marianas is a corporation with its principal place of business in the Commonwealth of the Northern Marianas Islands ("CNMI"), which operates as a Federal Aviation Administration ("FAA") certificated air carrier under FAA certificate no.: 1SMA230M to perform scheduled and on-demand operations for transportation of passengers and cargo between the islands of Tinian, Rota, Saipan, and Guam.

2.      Defendant Southern Airways Express is a United States based airline and limited liability corporation with a principal place of business in Palm Beach, Florida.

3.      Defendant Marianas Southern Airways was an airline with a principal address in Saipan MP.

4.      Defendant Stewart was the President of Marianas Southern Airways. At all times material to this Complaint, acting individually or in concert with others, Stewart formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Marianas Southern Airways, in the matters alleged here, and transacts, or has transacted business in this district. Defendant Stewart resides, or has resided, in and transacts or has transacted business, in the Northern Mariana Islands, with his principal office and place of business located in the CNMI.

2

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337 because this matter arises under federal law and pursuant to federal rules regulating commerce or protecting trade and commerce against restraint.

6.      Venue is proper in the United States District Court for the Northern Mariana Islands under 28 U.S.C.A. § 1391, as the Court has personal jurisdiction over the parties and the underlying predicate acts that form this action occurred in the CNMI. Defendants transact, and have transacted, business in this district.

**INTRODUCTION**

7.      The CNMI consists of several islands in the northwestern Pacific Ocean.

8.      Airports are therefore essential facilities in the CNMI because the only feasible mode of transportation is by air.

9.      At all times material to this Complaint, Marianas Southern Airways has maintained a substantial course of trade, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

10.     On March 21, 2022, Marianas Southern Airways executed a sole source contract (the "Contract") with the CNMI government for receipt of federal funds through the American Rescue Plan Act ("ARPA"). Please see a true and correct copy of the Contract attached hereto as **Exhibit "A."**

11.     The Contract was approved, signed, and executed by Keith Stewart, Director and

President of Marianas Southern Airways. See **Exhibit "A."**

12.    On March 21, 2022, Stewart received correspondence and approval from David DLG Atalig, Secretary of Finance, concerning the official Notice to Proceed for Contract No. 32200854 for the Airline Services (the "Notice"). Please see a true and correct copy of the Notice attached hereto as **Exhibit "B."**

13.    On March 21, 2022, David DLG Atalig received a Completion of Contract Processing Memorandum (the "Memorandum") from the Acting Director of Procurement Services, informing the Secretary of Finance that his office may proceed with contract implementation. Please see a true and correct copy of Contract No. 32200854 (the Contract) attached hereto as **Exhibit "C."**

14.    According to the Routing Slip and Contract Specifications, Marianas Southern Airways accepted a sole source procurement services contract from the Secretary of Finance in the amount of ($8,000,000.00) eight million dollars. Please see a true and correct copy of the Routing Slip attached hereto as **Exhibit "D."**

15.    The Contract was supplemented with a detailed letter from David DLG Atalig. Please see a true and correct copy of the letter, *Re: Sole source justification for award of contract to [Marianas Southern Airways],* (the "Letter"), attached hereto as **Exhibit "E."**

16.    Beginning August 2022 until April 2023, Marianas Southern Airways existed as the main competitor to Star Marianas in the CNMI as Star Marianas was the primary provider of commercial passenger flight travel between the islands of Saipan, Rota and Tinian.

4

17.     Marianas Southern Airways, by executing said Contract, entered into a predatory pricing scheme with the other Defendants, to use ARPA funding to fix prices below costs in the markets served by Star Marianas with the intent of causing injury to Star Marianas's business, and with the goal of running Star Marianas out of its free market business.

A.      *The Letter: Sole Source Justification For Award Of Contract to [Marianas Southern Airways]*

18.     David DLG Atalig's letter to Francisco C. Aguon, titled, *Re: Sole source justification for award of contract to Marianas Pacific Express, LLC*, (the "Letter") explained the scope for the Contract as consisting of "providing inter-island scheduled and chartered air and cargo passenger service between the islands of the Marianas Islands including Saipan, Tinian, Rota and Guam, at set rates, as well as to provide for additional considerations." See page 1 of 6, **Exhibit "E."**

19.     Pursuant to the Letter, Marianas Southern Airways entered into a joint venture with United States based airline, Southern Airways Express. *Id. at 1 of 6.*

20.     Southern Airways Express, referred to as a "reputable United-States based airline" serviced 39 flight destinations, 222 daily departures, and 35 aircrafts, focusing on inter-island commuter air travel including flights between the Hawaiian Islands. *Id. at 1 of 6.*

21.     The Letter alleges all CNMI Procurement Regulations had been followed in the approval and execution of said sole-source Contract with Marianas Southern Airways. *Id. at 1 of 6.*

5

22.     Citing Section 70-30.3-215(a) of the Procurement Regulations, David DLG Atalig requested approval to execute said sole-source Contract with Marianas Southern Airways, stating that "an agency is permitted to **procure services without using full and open competition** (such as a sole source procurement under Section 70-30.3-225(b)), justifying Marianas Southern Airways satisfies every requirement for receiving said federal funds, referring to Star Marianas as "the monopoly airline." *Id. at 3 of 6* (emphasis added).

23.     David DLG Atalig's Letter propounded "the CNMI's lone inter-island airline, Star Marianas Air" was "causing unease and panic especially for residents of Rota and Tinian." *Id. at 3 of 6.*

24.     In his Letter, David DLG Atalig explained the nature of Star Marianas' temporarily suspended flights between the islands of the CNMI by claiming "[t]he monopoly airline's hasty suspension of its inter-island commercial flights within the CNMI caused the utmost concern for the Rota and Tinian medical referral patients reliant on Star Marianas Air's flight schedule dependability for medical treatments and appointments on Saipan ... So as not to have this situation be repeated, the Commonwealth seeks immediate and critical inter-island travel alternatives to safeguard the health and safety of Tinian and Rota..." *Id. at 3 of 6.*

25.     Referencing Section 70.30.3-215(a)(1)(ii), David DL Atalig's Letter stated,

> Such reliable air-transportation services are not readily available within the Commonwealth and especially on the islands of Rota and Tinian. [Marianas Southern Airways] is unique in that the airline is locally run and partially owned by a resident of the Commonwealth. In addition, [Marianas Southern Airways] is also unique because its partial owner is associated with the reputable Southern Airways,

6

1

2

3

4

5

6

7

> who is already heavily involved and successful in conducting dependable inter-island air travel routes in the United States and most notably in the Hawaiian Islands. This joint venture is fitting for the Commonwealth as [Marianas Southern Airways] is not only locally based but has extensive experience and expertise between its partners to ensure that the CNMI's interisland travel accommodations can be met and that there are little to no transportation gaps between our islands in cases if emergency and medical related needs.

*Id. at 3 of 6.*

8

9

10

26.    Furthermore, David DLG Atalig's Letter boasted, "Marianas [Southern Airways] will be able to ensure that their services offer safety, reliability, and dependable accommodations for CNMI visitors and resident travelers." *Id. at 3 of 6.*

11

12

13

27.    Specifically, David DLG Atalig's Letter asserts reasonable prices and fees would be charged by Marianas Southern Airways. *Id. at 4 of 6.*

14

B.    *The Contract*

15

16

17

18

19

20

21

28.    Pursuant to the Contract, the purpose of said Contract "is to establish an incentive framework between [the Department of Finance, of the Commonwealth of the Northern Marianas Islands] and [Marianas Southern Airways] would be incentivized to provide inter-island passenger and cargo service in the Marianas Islands. This incentive framework will take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related pricing." *See* Page 2 of 6 of the Contract, **Exhibit "A."**

22

23

24

29.    Under the Contract, Marianas Southern Airways "agree[ed] to perform the services described in this contract and the documents attached and incorporated into this contract. [The

25

26

27

28

1  Department of Finance, of the Commonwealth of the Northern Marianas Islands] agre[ed] to make

2  incentive payments, in the amount and at a rate outlined in Exhibit B, in exchange for services.

3  The ceiling price for this Contract is eight million dollars ($8,000,000.00)." *Id.*

4  *Initial Incentive Fund*

5
6  30.    Pursuant to the Airline Incentive Program of the Contract,

7          [T]he CNMI shall provide to Marianas Southern $1.5 million dollars
          in ARPA sourced funding for the purpose of mitigating start-up
8          costs for the airline. "Start-up cost" include acquisition or
          mobilizing of aircraft/fuel and equipment, staffing, flight crews,
9          training, travel costs, consultants, preparing counter space at CNMI
          airports, and costs related to those activities. Within thirty days of
10         the start of flight operations in the CNMI, Marianas Southern will
          provide the CNMI an itemized accounting of the items that the
11         Initial Incentive Fund monies were used for. Any monies of the $1.5
          million Initial Incentive Fund not used on start-up costs will be
12         returned to the CNMI.

13
14  Please see a true and correct copy of the Airline Incentive Framework, attached hereto as

15  **Exhibit "F"** at 1.

16  *Flight Incentive Program*

17  31.    Pursuant to the Flight Incentive Program, during the incentive period, Marianas

18  Southern Airways agreed to provide a minimum of 42 weekly departures serving Saipan, Tinian,

19
    Rota, and Guam. Marianas Southern Airways also contracted to provide same-day connectivity
20
21  flights to Saipan with United Airlines' Honolulu-Guam flight. *See* **Exhibit "F"** at 2.

22  32.    Additionally, under the Flight Incentive Program, Marianas Southern Airways

23  would offer reduced fares, as low as $99.00 from Saipan to/from Guam, to passengers as a set-off

24
25  8
26
27
28

1    and attempt to monopolize the CNMI's airline industry, when the fare from Saipan to/from Guam

2    cost between $229.00-$269.00, following the Contract's termination. *Id.*

3         For the first six months of the incentive period, Marianas Southern shall offer flights at the
         following fares:

4

5              Saipan to/from Guam: $99.00
               Saipan to/from Tinian: $39.00
               Saipan to/from Rota: $69.00

6              Rota to/from Guam: $69.00

7         (b)  The CNMI shall provide the following per-flight/departure incentive funding during the
         incentive period:

8

| Incentive per Departure (Each Way) Based on Number of Monthly Segments | | | |
|---|---|---|---|
| Flight Between | First 500 | Next 500 | Next 1000+ |
| SPN & GUM | $583.33 | $486.11 | $416.67 |
| ROP & GUM | $408.33 | $340.28 | $291.67 |
| SPN & TIQ | $175.00 | $145.83 | $125.00 |
| SPN & ROP | $350.00 | $291.67 | $250.00 |
| TIQ & GUM | $495.83 | $413.19 | $354.17 |

13

14    *Id.*

15    <u>Government Related Pricing</u>

16         33.    Accordingly, the Government Related Pricing agreed to implement and to

17    administer a Corporate Discount Program for official CNMI government travel on any flight

18    operated by Marianas Southern Airways. Marianas Southern Airways contracted to be responsible

19    for ensuring approved travel agencies in the CNMI were able to issue airline tickets in accordance

20

21    with this discount ticket program. Under the program, Marianas Southern Airways agreed to

22    provide the CNMI government charters for the following rates:

23

24

25                                        9

26

27

28

| Route | Introductory Government Charter Rate | Incentive to be Applied | Final Costs |
|---|---|---|---|
| Saipan/Tinian | $450 | $175 | $625 |
| Saipan/Rota | $900 | $350 | $1,250 |
| Saipan/Guam | $1,600 | $583 | $2,183 |

*Id.*

## DEFENDANTS' BUSINESS PRACTICES

*American Rescue Plan Act Funds For Sole Source Contract*

34.     Starting in early 2020, the economy was severely impacted by the COVID-19 virus, which caused a world-wide pandemic.

35.     The pandemic caused drastic harm to businesses at large and increased financial needs resulting from staggering losses in jobs and income.

36.     On March 11, 2021, President Biden signed ARPA to provide direct relief and recovery to impacted persons and industries.

37.     Congress' stated purposes for the funds to be disbursed under ARPA were to relieve certain households, small businesses, non-profits, and "impacted industries such as tourism, travel, and hospitality." ARPA § 9901 (enacting 42 U.S.C. § 602, § 603).

38.     As a recipient of ARPA funds, Marianas Southern Airways is obligated to comply with Congress' stated purpose, federal rules, and regulations.

39.     After accepting ARPA funds, Marianas Southern Airways' assurances became a binding obligation between it and the federal government.

10

40.      Because it accepted ARPA funds, Marianas Southern Airways was required to utilize received funds for its intended purpose, not as a means of creating unfair treatment within the several islands in the northwestern Pacific Ocean's airline and air travel industry.

41.      Stewart alleged that the Contract would reduce airfare, in turn providing benefits to travelers and help the CNMI economy through a framework to take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related Pricing and stated that Marianas Southern Airways provided over 10,000 passenger flights and saved nearly $600,000 through reduced airfares.

42.      As a result, Star Marianas specifically experienced approximately $100,000.00 per month reduction in revenue, a significant loss of passengers, with a total loss of revenue estimated between $1,500,000.00 and $2,000,000.00.

43.      All conditions precedent to bringing this action have been performed, satisfied, are futile or have been waived, and the Plaintiff has retained the undersigned attorneys and are obligated to pay a reasonable fee.

## SPECIFIC ALLEGATIONS

### COUNT I: VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### (ALLEGED AS TO DEFENDANT, SOUTHERN AIRWAYS EXPRESS)
### 15 U.S.C. § 1

44.      Star Marianas re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.      Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the air carrier travel business in the CNMI.

11

46.    Southern Airways Express willfully, knowingly, and with specific intent to do so, attempted to monopolize the airline industry market through a litany of anticompetitive conduct, as detailed above.

47.    Specifically, Southern Airways Express' anticompetitive conduct insulated Southern Airways Express and Marianas Southern Airways from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry, and attempt to remove Star Marianas from the CNMI's air carrier market, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

48.    Southern Airways Express' unreasonable restraints unlawfully insulated Marianas Southern Airways' card acceptance fees from competition, increased costs of payment acceptance to merchants, increased prices, reduced output, harmed the competitive process, raised barriers to entry and expansion, and suppressed innovation.

49.    Any procompetitive benefits are outweighed by anticompetitive harm, and there are less restrictive alternatives by which Southern Airways Express would be able reasonably to achieve any procompetitive goals in the CNMI.

50.    Star Marianas has suffered substantial injury as a result of Southern Airways Express' conspiracy with Marianas Southern Airways and Stewart to injure Star Marianas and violation of the Sherman Act.

51.    Specifically, Southern Airways Express substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable restraint on trade within the flow of

12

commerce.

52.      For the reasons set forth above, Southern Airways Express has violated Section 1 of the Sherman Act, 15 U.S.C. §1.

**COUNT II: VIOLATION OF SECTION 2 OF THE SHERMAN ACT**
**(ALLEGED AS TO DEFENDANT, SOUTHERN AIRWAYS EXPRESS)**
**15  U.S.C. § 2**

53.      Star Marianas re-alleges paragraphs 1 through 52 as if fully set forth herein.

54.      Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the air carrier travel business in the CNMI.

55.      Southern Airways Express willfully, knowingly, and with specific intent to do so, attempted to monopolize the airline industry market through a litany of anticompetitive conduct, as detailed above.

56.      Specifically, Marianas Southern Airways utilized the Contract and its sole subsidized air carrier position to create unreasonable restraints on competition in the CNMI's airline industry market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

57.      Southern Airways Express' anticompetitive conduct insulated Southern Airways Express from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry, and to remove Star Marianas from the CNMI's air carrier market.

58.      Southern Airways Express' unreasonable restraints unlawfully insulated Southern Airways Express and Marianas Southern Airways card acceptance fees from competition,

13

increased costs of payment acceptance to merchants, increased prices, reduced output, harmed the competitive process, raised barriers to entry and expansion, and suppressed innovation.

59.     Any procompetitive benefits are outweighed by anticompetitive harm, and there are less restrictive alternatives by which Southern Airways Express would be able reasonably to achieve any procompetitive goals in the CNMI.

60.     Plaintiff has suffered substantial injury as a result of Southern Airways Express' conspiracy with Marianas Southern Airways and Stewart to injure Star Marianas and violation of the Sherman Act.

61.     Specifically, Southern Airways Express substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable restraint on trade within the flow of commerce.

62.     For the reasons set forth above, Southern Airways Express has violated Section 2 of the Sherman Act, 15 U.S.C. § 2.

**COUNT III: VIOLATION OF SECTION 1 OF THE SHERMAN ACT**
**(ALLEGED AS TO DEFENDANT, MARIANAS SOUTHERN AIRWAYS)**
**15 U.S.C. § 1**

63.     Star Marianas re-alleges paragraphs 1 through 62 as if fully set forth herein.

64.     Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the CNMI's air carrier travel business.

65.     Marianas Southern Airways willfully, knowingly, and with specific intent to do so, monopolized the airline industry market through a litany of anticompetitive conduct, as detailed

14

above.

66.     Specifically, Marianas Southern Airways utilized the Contract and its sole subsidized air carrier position to create unreasonable restraints on competition in the CNMI's airline industry market, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

67.     The Contract has had anticompetitive effects by protecting Marianas Southern Airways from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry to remove Star Marianas from the CNMI's air carrier market.

68.     Southern Airways Express' unreasonable restraints unlawfully insulated Marianas Southern Airways' card acceptance fees from competition, increased costs of payment acceptance to merchants, increased prices, reduced output, harmed the competitive process, raised barriers to entry and expansion, and suppressed innovation.

69.     The Contract was not reasonably necessary to accomplish any of Marianas Southern Airways' procompetitive goals.

70.     Marianas Southern Airways executed the Contract with the CNMI government for receipt of federal funds through the ARPA.

71.     As a recipient of ARPA funds, Marianas Southern Airways was obligated to comply with federal rules and regulations.

72.     Pursuant to this federal law, Marianas Southern Airways was required to allocate and strictly utilize federal funds for the benefit of CNMI's economy, post COVID-19 pandemic.

15

73.     As a recipient of ARPA funds, Marianas Southern Airways alleged that the Contract would reduce airfare, in turn providing benefits to travelers and help the CNMI economy through a framework to take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related Pricing.

74.     After accepting the Contract, Marianas Southern Airways' and Stewart's assurances were a binding obligation between it and the federal government.

75.     Marianas Southern Airways' primary purpose for pursuing and entering into the Contract was to cause injury to Star Marianas and attempt to monopolize the CNMI airline industry.

76.     In numerous instances in connection with the advertising, marketing, and promotion of its airline, Marianas Southern Airways misrepresented, expressly or by implication, that the fees and prices charged by Marianas Southern Airways were fair and reasonable.

77.     In numerous instances in connection with the advertising, marketing, and promotion of Marianas Southern Airways, Stewart misrepresented, expressly or by implication, that the funds received under the Contract was for the sole purpose to enhance local tourism and security to inter-island air travel.

78.     As such, any procompetitive benefits were outweighed by anticompetitive harm, and there are less restrictive alternatives by which Marianas Southern Airways would be able reasonably to achieve any procompetitive goals in the CNMI.

79.     Star Marianas has suffered substantial injury, as a result of Marianas Southern

Airways' conspiracy to injure Star Marianas and violation of the Sherman Act.

80.     Specifically, Marianas Southern Airways substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable restraint on trade within the flow of commerce.

81.     For the reasons set forth above, Marianas Southern Airways has violated Section 1 of the Sherman Act, 15 U.S.C. §1.

**COUNT IV: VIOLATION OF SECTION 2 OF THE SHERMAN ACT**
**(ALLEGED AS TO DEFENDANT, MARIANAS SOUTHERN AIRWAYS)**
**15  U.S.C. § 2**

82.     Star Marianas re-alleges paragraphs 1 through 81 as if fully set forth herein.

83.     Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the CNMI's air carrier travel business.

84.     Marianas Southern Airways willfully, knowingly, and with specific intent to do so, attempted to monopolize the airline industry market through a litany of anticompetitive conduct, as detailed above.

85.     Marianas Southern Airways executed a sole source contract with the CNMI government for receipt of federal funds through the ARPA.

86.     As a recipient of ARPA funds, Marianas Southern Airways was obligated to comply with federal rules and regulations.

87.     Pursuant to this federal law, Marianas Southern Airways was required to allocate and strictly utilize federal funds for the benefit of CNMI's economy, post COVID-19 pandemic.

17

88.     As a recipient of ARPA funds, Marianas Southern Airways alleged that the Contract would reduce airfare, in turn providing benefits to travelers and help the CNMI economy through a framework to take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related Pricing.

89.     After accepting the Contract, Marianas Southern Airways' and Stewart's assurances were a binding obligation between it and the federal government.

90.     Marianas Southern Airways' primary purpose for pursuing and entering into the Contract was to cause injury to Star Marianas to monopolize the CNMI airline industry.

91.     In numerous instances in connection with the advertising, marketing, and promotion of its airline, Marianas Southern Airways misrepresented, expressly or by implication, that the fees and prices charged by Marianas Southern Airways are fair and reasonable.

92.     In numerous instances in connection with the advertising, marketing, and promotion of Marianas Southern Airways, Stewart misrepresented, expressly or by implication, that the funds received under the Contract was for the sole purpose to enhance local tourism and security to inter-island air travel.

93.     The Contract created an unreasonable restrain on competition in the CNMI's airline industry market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

94.     The Contract has had anticompetitive effects by protecting Marianas Southern Airways from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry to remove

18

Star Marianas from the CNMI's air carrier market.

95.     Southern Airways Express' unreasonable restraints unlawfully insulated Marianas Southern Airways' card acceptance fees from competition, increased costs of payment acceptance to merchants, increased prices, reduced output, harmed the competitive process, raised barriers to entry and expansion, and suppressed innovation.

96.     The Contract was not reasonably necessary to accomplish any of Marianas Southern Airways' procompetitive goals.

97.     As such, any procompetitive benefits are outweighed by anticompetitive harm, and there are less restrictive alternatives by which Marianas Southern Airways would be able reasonably to achieve any procompetitive goals in the CNMI.

98.     Star Marianas has suffered substantial injury, as a result of Marianas Southern Airways' conspiracy to injure Star Marianas and violation of the Sherman Act.

99.     Specifically, Marianas Southern Airways substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable restraint on trade within the flow of commerce.

100.     Such economic power was not properly checked and did adversely impact the profitable and efficient operation of Star Marianas, especially creating unfair methods of competition in the CNMI.

101.     For the reasons set forth above, Marianas Southern Airways has violated Section 2 of the Sherman Act, 15 U.S.C. § 2.

19

## COUNT V: VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### (ALLEGED AS TO DEFENDANT, KEITH STEWART)
### 15 U.S.C. § 1

102.    Star Marianas re-alleges paragraphs 1 through 101 as if fully set forth herein.

103.    Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the CNMI's air carrier travel business.

104.    Stewart willfully, knowingly, and with specific intent to do so, attempted to monopolize the airline industry market through a litany of anticompetitive conduct, as detailed above.

105.    Specifically, Stewart, in his capacity as president and manager of Marianas Southern Airways, executed a sole source contract with the federal government for receipt of federal funds through the ARPA.

106.    As a recipient of ARPA funds, Marianas Southern Airways, through Stewart, was obligated to comply with federal rules and regulations.

107.    Pursuant to this federal law, Marianas Southern Airways, through Stewart, was required by law to allocate and strictly utilize federal funds for the benefit of CNMI's economy, post COVID-19 pandemic.

108.    As a recipient of ARPA funds, Marianas Southern Airways, through Stewart, alleged that the Contract would reduce airfare, in turn providing benefits to travelers and help the CNMI economy through a framework to take the form of an Initial Incentive Fund, a Flight

Incentive Program, and Government Related Pricing.

109.   After accepting the Contract, Marianas Southern Airways' and Stewart's assurances were a binding obligation between it and the federal government.

110.   Marianas Southern Airways' primary purpose for pursuing and entering into the Contract was to cause injury to Star Marianas and attempt to monopolize the CNMI airline industry.

111.   In numerous instances in connection with the advertising, marketing, and promotion of its airline, Stewart misrepresented, expressly or by implication, that the fees and prices charged by Marianas Southern Airways are fair and reasonable.

112.   In numerous instances in connection with the advertising, marketing, and promotion of its airline, Stewart, misrepresented, expressly or by implication, that the money received under the Contract was for the sole purpose to enhance local tourism and security to inter-island air travel.

113.   The Contract created an unreasonable restrain on competition, in the CNMI's airline industry market, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

114.   The Contract has had anticompetitive effects by protecting Marianas Southern Airways from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry to remove Star Marianas from the CNMI's air carrier market.

115.   Southern Airways Express conspired with Stewart to unreasonably restrain and

1   unlawfully insulate Marianas Southern Airways' card acceptance fees from competition, increased

2   costs of payment acceptance to merchants, increased prices, reduced output, harmed the

3   competitive process, raised barriers to entry and expansion, and suppressed innovation.

4       116.    The Contract was not reasonably necessary to accomplish any of Marianas

5   Southern Airways' procompetitive goals.

6

7       117.    As such, any procompetitive benefits are outweighed by anticompetitive harm, and

8   there are less restrictive alternatives by which Stewart could have reasonably achieved any

9   procompetitive goals in the CNMI, for the benefit of Marianas Southern Airways.

10      118.    Star Marianas has suffered substantial injury, because of Stewarts' actions,

11  Marianas Southern Airways' conspiracy to injure Star Marianas, and Marianas Southern Airways'

12  violation of the Sherman Act through the direct actions of Stewart.

13

14      119.    Specifically, Stewart, working on behalf of Marianas Southern Airways,

15  substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable

16  restraint on trade within the flow of commerce.

17      120.    Such economic power was not properly checked and did adversely impact the

18  profitable and efficient operation of Star Marianas, especially creating unfair methods of

19  competition in the CNMI.

20

21      121.    For the reasons set forth above, Stewart has violated Section 1 of the Sherman Act,

22  15 U.S.C. § 1.

23          **COUNT VI: VIOLATION OF SECTION 2 OF THE SHERMAN ACT**
            **(ALLEGED AS TO DEFENDANT, KEITH STEWART)**
24

25                                  22

26

27

28

**15 U.S.C. § 2**

122.    Star Marianas re-alleges paragraphs 1 through 121 as if fully set forth herein.

123.    Defendants possessed market power in the CNMI's air carrier market, and working together became direct competitors of Star Marianas in the CNMI's air carrier travel business.

124.    Stewart willfully, knowingly, and with specific intent to do so, attempted to monopolize the airline industry market through a litany of anticompetitive conduct, as detailed above.

125.    Specifically, Stewart, in his capacity as president and manager of Marianas Southern Airways, executed a sole source contract with the CNMI government for receipt of federal funds through the ARPA.

126.    As a recipient of ARPA funds, Marianas Southern Airways, through Stewart, was obligated to comply with federal rules and regulations.

127.    Pursuant to this federal law, Marianas Southern Airways, through Stewart, was required by law to allocate and strictly utilize federal funds for the benefit of CNMI's economy, post COVID-19 pandemic.

128.    As a recipient of ARPA funds, Marianas Southern Airways, through Stewart, alleged that the Contract would reduce airfare, in turn providing benefits to travelers and help the CNMI economy through a framework to take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related Pricing.

23

129.   After accepting the Contract, Marianas Southern Airways' and Stewart's assurances were a binding obligation between it and the CNMI government.

130.   Stewart's primary purpose for pursuing and entering into the Contract was to cause injury to Star Marianas and to attempt to monopolize the CNMI airline industry.

131.   In numerous instances in connection with the advertising, marketing, and promotion of its airline, Stewart misrepresented, expressly or by implication, that the fees and prices charged by Marianas Southern Airways are fair and reasonable.

132.   In numerous instances in connection with the advertising, marketing, and promotion of Marianas Southern Airways, Stewart misrepresented, expressly or by implication, that the money received under the Contract was for the sole purpose to enhance local tourism and security to inter-island air travel.

133.   The Contract created an unreasonable restrain on competition, in the CNMI's airline industry market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

134.   The Contract has had anticompetitive effects by protecting Marianas Southern Airways from competition over the cost of airline flight within and including the CNMI, and creating unfair competition and conspiracy to monopolize the CNMI airline industry to remove Star Marianas from the CNMI's air carrier market.

135.   Southern Airways Express conspired with Stewart to unreasonably restrain and unlawfully insulate Marianas Southern Airways' card acceptance fees from competition, increased costs of payment acceptance to merchants, increased prices, reduced output, harmed the

24

competitive process, raised barriers to entry and expansion, and suppressed innovation.

136. The Contract was not reasonably necessary to accomplish any of Stewart's or Marianas Southern Airways' procompetitive goals.

137. As such, any procompetitive benefits are outweighed by anticompetitive harm, and there are less restrictive alternatives by which Stewart could have reasonably achieved any procompetitive goals in the CNMI, for the benefit of Marianas Southern Airways.

138. Star Marianas has suffered substantial injury, because of Stewarts' actions, Marianas Southern Airways' conspiracy to injure Star Marianas, and Marianas Southern Airways' violation of the Sherman Act through the direct actions of Stewart.

139. Specifically, Stewart, working on behalf of Marianas Southern Airways, substantially affected interisland travel in the CNMI, directly causing disruption and unreasonable restraint on trade within the flow of commerce.

140. Such economic power was not properly checked and did adversely impact the profitable and efficient operation of Star Marianas, especially creating unfair methods of competition in the CNMI.

141. For the reasons set forth above, Stewart has violated Section 2 of the Sherman Act, 15 U.S.C. § 2.

## **PRAYER FOR RELIEF**

Plaintiff, STAR MARIANAS AIR, INC., respectfully requests that this Court enter judgment against Defendants for all counts including the following relief:

25

1.     That Defendants be permanently enjoined and restrained from establishing any similar agreement unreasonably restricting competition and conspiracy to monopolize the CNMI airline industry in violation of Section 1 and Section 2 of the Sherman Act;

2.     For an award of actual damages in favor of Star Marianas Air, Inc., and against all Defendants, jointly and severally, for violations of Section 1 and Section 2 of the Sherman Act; in an amount to be determined at trial;

3.     For an award of treble damages, prejudgment interest, and reasonable attorneys' fees, and costs in favor of Star Marianas Air, Inc., and against all Defendants, jointly and severally, as allowed by statute;

4.     Such other or further relief as the Court may find just, and proper.

Dated: June 25, 2024

              */s/ Richard Richards*
              Richard Richards
              Attorney for Star Marianas Air, Inc.
              *Pro Hac Vice* Application Pending

              **RICHARDS LEGAL GROUP**
              *Attorneys for Plaintiff Star Marianas Air, Inc.*
              55 Miracle Mile, Suite 310
              Coral Gables, Florida 33134
              Telephone: (305) 448-2228
              Facsimile: (305) 448-2229
              Primary E-mail: rrichards@richpa.net
              Secondary E-mail: angelica@richpa.net
              Service E-mail: service@richpa.net

1

2

3                                             Mark Scoggins

                                             Attorney for Star Marianas Air, Inc.

4

5

6                                             **SCOGGINS LAW OFFICE, LLC**

                                             *Attorney for Plaintiff Star Marianas Air, Inc.*

7                                             Mark Scoggins, Esq.

                                             P.O. Box 501127

8                                             Saipan, MP 96950

                                             Telephone: (670) 234-7455

9                                             Primary Email: markascoggins@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                  27

25

26

27

28