MARK A. SCOGGINS
SCOGGINS LAW OFFICE, LLC
2nd Floor, MIC1 U2, 2601 Chalan MSGR Guerrero
Chalan Laulau Village
P.O. Box 501127
Saipan, MP 96950
Telephone No.: (670) 234-7455/234-7427
Facsimile No.: (670) 234-7256
Email: scogginslawoffice@gmail.com
        markascoggins@gmail.com

Attorney for Star Marianas Air, Inc.

## THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN AIRWAYS EXPRESS, LLC, *et al.,*<br><br>Defendants. | Case 1:24-CV-00010<br><br>**OPPOSITION TO MOTION TO DISMISS** |

Star Marianas Air, Inc. hereby opposes Defendant Southern Airways Express, LLC's Motion to Dismiss (ECF 15) as follows:

1.     Defendant Southern Airways Express, LLC has filed a motion to dismiss Counts I and II of the Complaint (ECF 1) arguing that it is entitled to so-called *Parker* immunity from anti-trust claims, and also arguing that Plaintiff Star Marianas Air, Inc. has failed to name a necessary party to this action, the government of the Commonwealth of Northern Mariana Islands.  Defendants Marianas Pacific Express, LLC and Keith Stewart have joined in the motion. (ECF 16).  Star Marianas addresses each argument in turn.

***Parker* Immunity Is Not a Proper Subject for a Motion to Dismiss in this Case.**

2.     First, to survive a motion to dismiss, the complaint must merely contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*    As to this motion, however, Southern Airways prematurely and improperly seeks dismissal based – not on the sufficiency of the allegations in the complaint– but rather on the merits of the contested facts of this case.  The Court can deny the <u>Motion to Dismiss</u> for this reason alone.

**Parker Immunity Is Disfavored and Does Not Apply to These Defendants.**

3.      Additionally, Southern Airways's  assertion of immunity makes conclusory arguments that *Parker* immunity applies. Specifically, Southern Airways claims the action being challenged is strictly state-action, and thus is subject to immunity under the *Parker* immunity doctrine. In *Parker v. Brown*, the Supreme Court interpreted the Sherman Act as applying only to private actors and not to state sovereigns. Under the *Parker* doctrine, state government's conduct is exempt from liability under the federal antitrust laws when the state acts in its sovereign capacity, such as by enacting a law. See *Parker v. Brown*, 317 U.S. 341 (1943)(holding that under certain circumstances, immunity from the federal antitrust laws may extend to nonstate actors carrying out a State's regulatory program).

4.      Star Marianas has filed claims against all of the Defendants alleging that they engaged in a scheme to monopolize inter-island air transportation in the Marianas and Guam in violation of the anti-trust provisions of the Sherman Act, and that they did so with the intent to harm Star Marianas Air and put it out of business.  As alleged in the <u>Complaint</u>, the Defendants in this matter entered into agreements through which up to $8,000,000.00 in federal American Rescue Plan Act ("ARPA") funding was funneled to Defendants in order to subsidize the creation of a new airline in the CNMI, Marianas Southern Airways, and also to subsidize the airfares on travel between the islands of the CNMI, and travel between the CNMI and Guam, substantially undercutting Star Marianas.

5.      Defendants argue in their motion that the claims must be dismissed because the are entitled to so-called *Parker* Immunity, also known as "state-action immunity."  This argument is stated broadly in the motion, with Southern Airways arguing simply that "Under the *Parker* immunity doctrine, federal antitrust laws do not apply to actions by the states."  <u>Motion to Dismiss</u>, (ECF 15-1), pg. 3, lns. 8-9 citing *Parker v. Brown*, 317 U.S. 341 (1953). The argument is that because in taking the actions they

took, the Defendants did so through a contract with the CNMI government, and the activity was therefore "state action... that falls squarely within the Realm of the *Parker* immunity doctrine which, by extension, applies to private parties like Southern Airways and the two other defendants as well." *Id.*, pgs. 8-9. The argument both overstates the doctrine and obfuscates its actual application, especially as that application would or might pertain to air travel. It is simply not possible for *Parker* immunity to apply to Defendants in the manner that they argue.

6.      This is true because in order for *Parker* immunity to apply, two standards must be met. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." *California Liquor Dealers v. Midcal Aluminum*, 445 U.S. 97, 105 (1980) citing *City of Lafayette v. Louisiana Power Light Co.*, 435 U.S. 389, 410 (1978). Southern Airways cannot meet either of these standards.

**There Is No Clearly Articulated State Policy to Create a Monopoly in Airline Travel.**

7.      Neither Southern Airways nor the other two Defendants in this matter can point to "a clearly articulated and affirmatively expressed state policy" in the CNMI to displace competition in the airline industry.   In the Ninth Circuit, "Our inquiry with respect to the clear-articulation test is a precise one. '[T]he relevant question is whether the regulatory structure which has been adopted by the state has specifically authorized the conduct alleged to violate the Sherman Act.'" *Chamber of Commerce v. City of Seattle*, 890 F.3d 769, 782 (9th Cir. 2018) quoting *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 942 (9th Cir. 1996).   Further, "the state's authorization must be plain and clear: The relevant statutory provisions must ' plainly show' that the [state] legislature contemplated the sort of activity that is challenged, which occurs where they 'confer express authority to take action that foreseeably will result in anti-competitive effects.'" *Id.*, quoting *Hass v. Or. State Bar* , 883 F.2d 1453, 1457 (9th Cir. 1989).   "The state, in its sovereign capacity, must 'clearly intend[ ] to displace competition in a particular field with a regulatory structure ... in the relevant market.'"  *Id.*, quoting *S. Motor Carriers Rate Conference, Inc. v. United States* , 471 U.S. 48, 64, (1985).

8.      Southern Airways attempts to argue that it entered into a contract that justified its own existence by pointing to the need to "maintain or revive tourism and tourism related activities in the

1   CNMI" in the wake of the COVID-19 pandemic.  ECF 15-1 pg. 9, lns. 4-5 quoting ECF 1-1 at pgs 1-2.

2   This does not, however, manifest a clear intent to displace competition in the airline industry.

3   Maintaining and reviving tourism is a worthy goal for the CNMI government.  It is not, however, "a

4   clearly articulated and affirmatively expressed state policy" to destroy competition in air travel  in the

5   CNMI.  Southern Airways cannot show that the government had a policy to create a monopoly in the

6   airline industry, and the motion to dismiss should be denied.

7   **A State Policy to Restrict Airline Competition Would Violate Federal Law.**

8       9.      Even if there were a "a clearly articulated and affirmatively expressed state policy" to

9   destroy competition in the airline industry, such a policy would be illegal under federal law.  The Federal

10  Aviation Act of 1958, as amended, establishes the framework for civil aviation in the United States.

11  Among many other goals and priorities, it promotes the public interest in air transportation by "placing

12  maximum reliance on competitive market forces and on actual and potential competition – (A) to

13  provide the needed air transportation system; and (B) to encourage efficient and well-managed air

14  carriers to earn adequate profits and attract capital, considering any material differences between

15  interstate air transportation and foreign air transportation."  49 U.S.C. §40101(a)(6), emphasis added.

16      10.     The law also works toward "preventing unfair, deceptive, predatory, or anti-competitive

17  practices in air transportation," and "avoiding unreasonable industry concentration, excessive market

18  domination, monopoly powers, and other conditions that would tend to allow at least one air carrier or

19  foreign air carrier unreasonably to increase prices, reduce services, or exclude competition in air

20  transportation."  49 U.S.C. §40101(a)(9) & (10).   It prioritizes "encouraging, developing, and

21  maintaining an air transportation system relying on actual and potential competition – (A) to provide

22  efficiency, innovation, and low prices; and (B )to decide on the variety and quality of, and determine

23  prices for, air transportation services." 49 U.S.C. §40101(a)(12), Even if the CNMI had held a clearly

24  articulated policy to create a monopoly in the airline industry, such a  policy would be antithetical to the

25  Federal Aviation Act.

26      11.     More specifically, "a State... may not enact or enforce a law, regulation, or other

27  provision having the force and effect of law related to a price, route, or service of an air carrier that may

28

provide air transportation...."  49 U.S.C. §41713(b).  In this matter, as alleged in the Complaint, the Defendants worked under a government-created "Airline Incentive Program," subsidized by $8,000,000.00 in ARPA funds, through which "Marianas Southern Airways would offer reduced rates, as low as $99.00 from Saipan to/from Guam, to passengers as a set-off and attempt to monopolize the CNMI's airline industry, when the fare from Saipan to/from Guam cost between $229.00-$269, following the contracts termination."  ECF 1, ¶32. This is just one of many anti-competitive actions taken by Defendants, actions that are clearly contrary to established federal statute.   As such there can be no "clearly articulated and affirmatively expressed state policy" in this area of commerce.  The motion should be denied.

**There Was Also No Active Supervision of the Anti-Competitive Action by the CNMI.**

12.     Turning to the second standard, the *Parker* immunity argument must also fail because the anti-competitive conduct was not "actively supervised" by the CNMI.     This standard applies "where, as here, 'state or municipal regulation by a private party is involved, ... active state supervision must be shown, even where a clearly articulated state policy exists.'"  *Chamber of Commerce v. City of Seattle*, 890 F.3d 769, 787 (9th Cir. 2018) quoting  *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 (1985), also citing *Southern Motor Carriers Rate Conf. v. U.S.*, 471 U.S. 48, 61 (1985). "The active supervision requirement demands ... 'that state officials have and exercise power to review particular anti-competitive acts of private parties and disapprove those that fail to accord with state policy.'" *Id.*, quoting *N.C. State Bd. of Dental Examiners v. FTC* ,135 S.Ct. 1101, 1112, (2015) (quoting *Patrick v. Burget* , 486 U.S. 94, 101, 108 (1988)).  There is no indication  anywhere in the <u>Complaint</u> or the documents attached to it that the CNMI had the intent, ability, wherewithal, power, or authority to oversee the Defendants anti-competitive acts.

13.     Here, Southern Airways presents a failed argument to apply the state-action exemption to authorize non-state actors (Defendants) to violate federal antitrust law. Moreover, Southern Airways ignores the fact that, by executing the Contract, Defendants entered into a predatory pricing scheme to use ARPA funding to fix prices below costs in the markets served by Star Marianas with the specific intent to cause injury to Star Marianas's business, and with the goal of running Star Marianas out of its

1   free market business. Because Marianas Southern Airways accepted ARPA funds, Marianas Southern
2   Airways was required to utilize received funds for the law's intended purpose, not as a means of
3   creating unfair treatment within the CNMI's airline and air travel industry.

4   **State Action Immunity Is Disfavored.**

5       14.    As stated by the Ninth Circuit, "State-action immunity is the exception rather than the
6   rule. Indeed, the Supreme Court has stressed that it is 'disfavored': [G]iven the fundamental national
7   values of free enterprise and economic competition that are embodied in the federal antitrust laws,
8   'state-action immunity is disfavored, much as are repeals by implication.'" *Chamber of Commerce v.*
9   *City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018) citing *Fed. Trade Comm'n v. Phoebe Putney Health*
10  *Sys., Inc.*, 568 U.S. 216, 225 (2013) (quoting *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)).
11  Further, the U.S. Supreme Court "'recognize[s] state-action immunity only when it is clear that the
12  challenged anti-competitive conduct is undertaken pursuant to a regulatory scheme that 'is the State's
13  own.'" *Id.*

14  **Southern Airways Cannot Show that the CNMI Is an Indispensable Party.**

15      15.    Southern Airways next argues that the case should be dismissed under Rules 12(b)(7) and
16  19 because Star Marianas has not named the CNMI as a necessary party. In making this argument,
17  Southern Airways quotes the entirety of Fed. R. Civ. P. 19(a)(1). The actual argument it brings,
18  however, is limited to only to Rule 19(a)(1)(B)(I) – an argument that the CNMI government is
19  indispensable because the CNMI "claims an interest relating to the subject of the action and is so situated
20  that disposing of the action in the [CNMI's] absence may: (I) as a practical matter impair or impede the
21  [CNMI's] ability to protect the interest. Fed. R. Civ. P. 19(a)(1)(B)(I). Southern Airways argument is
22  unsupported and unsupportable under the facts of this case.

23      16.    The argument is unsupportable because Southern Airways limits its argument to the
24  circumstances of the contract with the CNMI. It argues that the CNMI is an indispensable party because
25  "the Court cannot accord complete relief in relation to a contract to which [the CNMI] is a party, and
26  which Plaintiff seeks to have declared illegal and enjoined from further enforcement." ECF 15-1, pg.
27  13, lns. 2-4, emphasis added. Star Marianas can only respond that it has not sought relief in relation to
28

1    any contract, and it does not seek to have any contract declared illegal or enjoined from enforcement.

2          17.    Southern Airways's argument has nothing to do with anything happening in this lawsuit.

3    All of the allegations in the <u>Complaint</u> concerning the contract refer to activities that have already

4    occurred in the past.  Star Marianas has made no allegations that performance under the contract is

5    ongoing, or that performance is still required.  The only request for injunctive relief Star Marianas has

6    made has nothing to do with the past contract, and would only restrain the Defendants "from establishing

7    any similar agreement..." in the future.  See ECF 1 at Prayer for Relief.  Nothing that Star Marianas has

8    requested of the Court will have any impact on the CNMI's past contractual relationship with any party

9    to this case.

10          18.    Even so, Southern Airways continues with this argument by stating that "Ninth Circuit

11    precedent establishes that an absent party may be required in an action seeking equitable relief that

12    would prevent a defendant from fulfilling "substantial" contractual obligations to the absent party." ECF

13    15-1, pg 13, lns. 9-11.  This may be the legal standard, but there is no allegation anywhere in the

14    <u>Complaint</u> that would prevent any defendant from fulfilling any ongoing contractual obligations to any

15    other party.

16          19.    Finally, Southern Airways argues that "The CNMI clearly has an interest, namely the

17    Agreement, and disposing of this action in the manner in which Plaintiff requests would, as a practical

18    matter, impair or impede the CNMI's ability to protect that interest."  ECF 15-1, pg 13, lns. 15-17.  As

19    practical matter, this argument is hogwash.  Again, all of the allegations in the <u>Complaint</u> that touch on

20    the matter of the contract concern activity that took place in the past.  That performance is done so far

21    as the allegations are concerned. Star Marianas does not seek to impair or impede any activity under that

22    contract.  It merely asks the Court to enjoin the named Defendants from engaging in future anti-

23    competitive conduct, and to pay Star Marianas for the damage they have caused.  These are the only

24    arguments that Southern Airways has made with respect to Rule 19, and they are inapplicable to

25    anything that might happen in this lawsuit.  For purposes of the motion as presented, Southern Airways

26    has therefore not shown that the CNMI is indispensable, and the motion should be denied.

27

28                             *Opposition To Motion To Dismiss - Page 7 of 8*

1

Respectfully submitted October 8, 2024.

2

3

4
MARK SCOGGINS
Attorney for Star Marianas Air, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28