F I L E D
Clerk
District Court
FEB 28 2025
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC., | Case No. 1:24-cv-00010 |
| Plaintiff, | |
| v. | MEMORANDUM DECISION DENYING DEFENDANT SOUTHERN AIRWAYS EXPRESS LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(7), 19 |
| SOUTHERN AIRWAYS EXPRESS, LLC, MARIANAS PACIFIC EXPRESS, LLC d/b/a MARIANAS SOUTHERN AIRWAYS, and KEITH STEWART, | |
| Defendants. | |

This matter came before the Court for a hearing on Defendant Southern Airways Express LLC's ("Southern Airways") Motion to Dismiss Plaintiff Star Marianas Air, Inc.'s ("Star Marianas") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. ("Mot." 2-3, ECF No. 39.) Defendants Marianas Pacific Express, LLC d/b/a/ Marianas Southern Airways ("MSA") and Keith Stewart ("Stewart") joined in Southern Airways's Motion. ("Joinder," ECF No. 40.) Star Marianas opposed Southern Airways's Motion. (ECF No. 41.) Southern Airways replied in support of its Motion (ECF No. 42) to which MSA and Stewart joined (ECF No. 43). Defendants argued for dismissal because Star Marianas failed to join the government of the Commonwealth of the Northern Mariana Islands ("CNMI") and that it is a necessary and indispensable party under Rule 19(a)(1)(B). After reviewing the filings, considering the legal authorities, and hearing oral argument at the hearing, the Court denied Southern Airways's Motion. (Mins., ECF No. 48; Tr. 43, ECF No. 49.) The Court details its reasoning herein.

I. **FACTUAL BACKGROUND**

Beginning in early 2020, the United States economy was severely impacted by the COVID-19 worldwide virus. (FAC ¶ 34, ECF No. 34.) In March 2021, President Joseph Biden signed the American Rescue Plan Act ("ARPA") of 2021. (*Id.* ¶ 36.) *See* Pub. L. 117-2 (Mar. 11, 2021).

For a period of about nine months, from August 2022 to April 2023, MSA existed as the main competitor with Star Marianas in the CNMI, and Star Marianas was the primary provider of commercial passenger flights between the islands of Saipan, Rota, and Tinian. (FAC ¶ 16.) MSA entered into a joint venture with Southern Airways. (*Id.* ¶ 19.) Stewart was the President of MSA. (*Id.* ¶ 4.)

On March 10, 2022, David DLG. Atalig, Secretary of Finance, sent a letter to Francisco C. Aguon, Acting Director, Division of Procurement Services, Department of Finance ("DOF"), requesting approval to execute a sole source contract with MSA pursuant to sections 70-30.3-215 and 70-30.3-225 of the Procurement Regulations. (Exs. A to F 28, ECF No. 34-1.) The Letter details the scope of the contract as providing inter-island scheduled and chartered air and cargo services between the islands at set rates as well as provide for additional considerations. (*Id.*)

Secretary Atalig stated that the requirements under 70-30.3-215(a) and 70-30.3-225(b) are met through the proposed contract. (*Id.* at 28-30.) The Letter details the purpose of the contract as providing inter-island scheduled and chartered air and cargo service between the islands at set rates as well as provide for additional considerations. (*Id.* at 28, 30.) Further, the Letter states there was only one airline, Star Marianas, that provided commercial passenger flights between the islands and only one airline—United Airlines—that provided commercial passenger flights between Guam and Saipan. (*Id.* at 32.) The contract would provide tourists a secondary accommodation option and additional flight schedules and therefore assist the islands

commercial activities that were detrimentally impacted due to the COVID-19 pandemic. (*Id.*) Secretary Atalig states that Star Marianas has expressed that they lack resources, staffing, and capacity to increase flights to and from Saipan and the other islands. (*Id.*) Additionally, the CNMI has pursued other avenues to meet the critical need of air transportation, but nothing has materialized. (*Id.*) Star Marianas temporarily suspended flights between the CNMI, which caused unease of residents from Rota and Tinian. (*Id.*) The Letter states, "[t]he monopoly airline's hasty suspension of its inter-island commercial flights within the CNMI caused the utmost concern for the Rota and Tinian medical referral patients reliant on STAR Marianas Air's flight schedule . . . ." (*Id.* at 30.) Because Star Marianas has also canceled flights unexpectedly, due to the lack of options for air-transportation across the islands, the contract will provide for more dependable interisland travel options. (*Id.*) The Letter states that the services are not unnecessarily duplicative and discusses MSA's qualifications. (*Id.*) Further, the Letter states the terms of the Contract and its reasonableness. (*Id.* at 31-32.) The Letter concludes by seeking approval for the Office of the Governor to enter into the sole source contract with MSA. (*Id.* at 33.)

On March 21, 2022, Acting Director Aguon issued a Memorandum stating that pursuant to NMIAC section 70-30.3-115(g)(1) of the Procurement Regulations, processing was complete, and that contract implementation may proceed. (Exs. A to F 24.) On the same day, MSA executed a sole source contract, otherwise known as the airline incentive agreement (the "Contract"), with the CNMI government for receipt of federal funds through ARPA. (FAC ¶ 10; Exs. A to F 2.) Stewart approved and signed the Contract on behalf of MSA, as its Director and President, and David DLG. Atalig, Secretary of Finance, signed on behalf of the CNMI DOF as the expenditure authority. (FAC ¶ 11; Exs. A to F 6-7.) Additionally, a number of other CNMI officials signed

the Contract including Attorney General Edward Manibusan, Governor Ralph Deleon Guerrero Torres, and Acting Director Aguon. (Exs. A to F 6-7.)

The Contract provides for an incentive framework that includes an Initial Incentive Fund, a Flight Incentive Program, and Government Related pricing. (FAC ¶ 28 (citing Exs. A to F 3).) The Airline Incentive Framework's recitals state that the recent temporary closure of Star Marianas demonstrated the vulnerability of the CNMI economy to only have one air carrier in the CNMI; through the use of ARPA funds, the CNMI can incentivize MSA to begin operations. (Exs. A to F 35.) The Incentive Agreement includes the CNMI providing start-up funding and per flight incentive funding for a set period of time and in return, MSA agrees to operate certain flights at set rates as well as provide other considerations. (*Id.*) The CNMI would provide MSA $1.5 million in ARPA sourced funding for start-up costs with conditions. (*Id.* at 30.) MSA agreed to offer a minimum of forty-two weekly departures serving Saipan, Tinian, Rota, and Guam. (*Id.* at 31.) MSA further agreed that for the first six months of the incentive period—which is a period of eighteen months after the first flight scheduled in June 2022—it will offer flights at the following rates:

Saipan to/from Guam: $99.00
Saipan to/from Tinian: $39.00
Saipan to/from Rota: $69.00
Rota to/from Guam: $69.00

(*Id.* at 36). Additionally, MSA agreed to government related pricing for at least the incentive period. (*Id.* at 38.) In return, CNMI would provide set pre-flight/departure incentive funding during the incentive period—the amount provided varied depending on departure and arrival destinations. (*Id.* at 36.)

To claim the incentive money, MSA would submit a report to the CNMI within fifteen days of the end of the month listing the number of flights for the prior month and the incentive amount. (*Id.*) After receipt, the CNMI would have thirty days to verify the authenticity of the

claims and thereafter the CNMI would immediately remit the total incentive amount for the month. (*Id.*)

Stewart alleged that the Contract would reduce airfare and help the CNMI economy. (FAC ¶ 41.) The framework stated MSA would provide over 10,000 passenger flights and save nearly $600,000 through reduced airfares. (*Id.*) Star Marianas estimates that it lost $100,000 per month in revenue with a total loss of revenue estimated between $1.5 to $2 million. (*Id.* ¶ 42.)

In its FAC, Star Marianas brings separate causes of action for two violations of the Sherman Act. The first is under 15 U.S.C. § 1, against Southern Airways (*id.* ¶¶ 44-52 (Count I)), MSA (*id.* ¶¶ 63-81 (Count III)), and Keith Stewart (*id.* ¶¶ 102-21 (Count V)); and the second is under 15 U.S.C. § 2, against Southern Airways (*id.* ¶¶ 53-62 (Count II)), MSA (*id.* ¶¶ 82-101 (Count IV)), and Keith Stewart (*id.* ¶¶ 122-41 (Count VI)).

Star Marianas seeks an award for actual damages against all three Defendants jointly and severally for violations of section 1 and 2 of the Sherman Act, in an amount to be determined at trial. (*Id.* at Prayer for Relief.) Star Marianas also requests for an award of treble damages, prejudgment interest, and reasonable attorneys' fees, and costs against Defendants jointly and severally. (*Id.*) Finally, Star Marianas asks for such other relief as the Court may find just and proper. (*Id.*) Defendant Southern Airways moved to dismiss the FAC under Rules 12(b)(7) and 19 for failure to join the CNMI.

## II.     LEGAL STANDARD

Failure to join a party under Rule 19 is a defense under Rule 12(b)(7). Rule 19 provides a three-step process for the Court to determine if an action should be dismissed for failure to join a "purportedly indispensable party." *United States v. Bowen*, 172 F.3d 682, 688 (1999).

First, the court must determine if the absent party is "necessary." *Id.* A necessary party is one required under Rule 19. *See id.* Rule 19 dictates,

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in the person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Second, if the absent party is "necessary," the court must determine whether joinder is "feasible." *Bowen*, 172 F.3d at 688. Third, if joinder is not "feasible," the court must decide whether the absent party is "indispensable" or in other words, whether an action can continue without the party in "equity and good conscience." *Id.* (quoting Fed. R. Civ. Proc. 19(b)).

A court considers the following factors in determining if an action may proceed without a party in equity and good conscience:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>    (A) protective provisions in the judgment;
>    (B) shaping the relief; or
>    (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. Proc. 19(b)(1)-(4).

### III. ANALYSIS

Southern Airways argued that dismissal is proper under Rule 12(b)(7) because Star Marianas failed to join the CNMI, a necessary and indispensable party under Rule 19 because in order to grant the requested relief by Star Marianas, the Court must declare that the Contract between the CNMI and Southern Airways was illegal. (Mot. 2-3, 5.) Star Marianas argued that it does not seek to void the Contract but seeks to hold Defendants liable for violations of the Sherman Act. (Opp. 2.) At the hearing, Southern Airways represented its Motion is under

The Ninth Circuit has repeatedly held that "all parties to a contract are necessary in an action to set aside a contract. *Id.* at 1053 (citing *Wilbur*, 423 F.3d at 113). However, it has also long been the rule that a party is not required to name all joint tortfeasors as defendants in a single lawsuit. *Id.* at 1049 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). "It therefore follows that a plaintiff is 'not required to sue all of the alleged conspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy.'" *Id.* (quoting *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*, 668 F.2d 1014, 1053 (9th Cir. 1982)) (citations omitted). "For this reason, an absent antitrust co-conspirator generally will not be a required party under Rule 19(a)(1)(A)." *Id. Ward* held that the absent party was not a required party under Rule 19(a)(1)(A) because if the plaintiffs prevailed, they would be able to recover all damages from the named party. *Id.* Here, because Star Marianas only seeks damages and no longer seeks injunctive relief as against the CNMI, if Star Marianas were to prevail, the Defendants do not point to any relief which is prayed for that the Court could not award. As such, the Court does not find that the CNMI is a necessary party under Rule 19(a)(1)(A).

Moving to Rule 19(a)(1)(B), the Ninth Circuit recognizes that the status as a joint tortfeasor does not negate parties' status as contractual parties. *Id.* The Ninth Circuit found pursuant to Rule 19(a)(1)(B), that district courts must specifically identify the absent parties' legally protected interest and how those interests would be impaired if resolved in their absence. *Id.* In *Ward*, there were three contractual rights that the defendant asserted would be impaired if the action was resolved without the absent parties' presence. *Id.* The first contractual right asserted focuses on plaintiffs' request for judgment that would order Apple to provide unlock codes upon request to all members of the class. *Id.* at 1053. ATTM did have a right to control unlock codes, but it was for a specific period of time outlined in an agreement between Apple and ATTM. *Id.* at 1054. The Ninth Circuit stated "[a]s a threshold matter, we must determine

whether the record supports a finding that ATTM *currently* has such a right" to prevent Apple from unlocking ATTM customers' iPhones. *Id.* at 1053-54 (emphasis added). The Ninth Circuit examined the only possible sources of the right and found that there was nothing in the record that indicated that the absent party "still has the right." *Id.* Similarly for the second contractual right asserted, Apple argued that the court would inevitably have to interpret the terms of the absent party's contracts with consumers in ways that could impact ATTM's rights under those contracts. *Id.* The Ninth Circuit reasoned that even if the district court ultimately interpreted the contracts Apple contends, the non-party would not be bound by its interpretation. *Id.* The Ninth Circuit has "required that the interest 'be more than a financial stake, and more than speculation about a future event.'" *Id.* at 1051 (quoting *Cachil Dehe Band of Wintun Indians of the Colusa Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008)).

In this case, Defendants specifically identified CNMI's legally protected interest as "whatever contractual rights remain with respect to the contract that is at the heart of this dispute." (Tr. 20.) The Contract at issue remained in effect "for a two-year period beginning on the date the Notice to Proceed was issued." (Exs. A to F 4.) The SOF issued the Notice to Proceed, which established March 21, 2022, as the official Notice to Proceed date. (*Id.* at 22.) Star Marianas filed this action on June 25, 2024, against Defendants which is after the Contract expired. (*See* Compl. 1, ECF No. 1.) When Star Marianas filed this action, there was no ongoing contract. Therefore, in reviewing the expired Contract, the Court finds that there is nothing to indicate the CNMI currently has a right under the Contract that is legally protected for purposes of making the CNMI a necessary party to this action just as in *Ward*. Defendants argued that there are contractual rights that survive the two-year term of the Contract—for example, if a potential breach is discovered. (Tr. 20.) However, the Ninth Circuit has stated that the legally

protected interest must be more than speculation about a future event. *Ward*, 791 F.3d at 1051. For these reasons, the Court finds that the CNMI is not a necessary party.

Defendants also rely on *Wilbur* to support their Motion. 423 F.3d 1101, 1104 (2005). However, in *Wilbur*, the Ninth Circuit found that because the absent party had an interest in retaining the rights granted by the compact, the requirement of a legally protected interest was satisfied. *Id.* at 1113. However, in this case, the Contract period has ended, and Defendants were unable to point to any specific legally protected interest that the CNMI has retained after its term has ended. Because the Court has determined that the CNMI is not a necessary party, it need not determine if they are indispensable and whether joinder is feasible.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the CNMI is not a necessary party to this action under Rules 12(b)(7) and 19. As such, the Court denied Southern Airways's Motion to Dismiss for Plaintiff's failure to join the CNMI.

IT IS SO ORDERED this 28th day of February 2025.

*/s/ Ramona V. Manglona*

RAMONA V. MANGLONA
Chief Judge