**MARIANAS LEGAL STRATEGY GROUP, LLC**
Sean E. Frink
Security Title Bldg., 2nd Floor
Isa Drive, Capital Hill
P.O. Box 10001, PMB 323
Saipan, MP 96950
Telephone No. (670)322-9991
Facsimile No. (670)322-9993
sfrink@mlsg.law

**HINSHAW & CULBERTSON LLP**
Brian R. Zeeck (*Pro Hac Vice*)
John P. Ryan (*Pro Hac Vice*)
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone No. (312) 704-3464
Facsimile No. (312) 704-3001
bzeeck@hinshawlaw.com
jryan@hinshawlaw.com

Attorneys for Defendant
Southern Airways Express, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN AIRWAYS EXPRESS, LLC,<br>MARIANAS PACIFIC EXPRESS LLC d/b/a<br>MARIANAS SOUTHERN AIRWAYS, and<br>KEITH STEWART,<br><br>Defendants. | Civil Action No. 24-00010<br><br><br>**SOUTHERN AIRWAYS EXPRESS'S<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS**<br><br>Judge:  Hon. Ramona V. Manglona<br>Hearing: |

1

2

**TABLE OF CONTENTS**

3

I.       ARGUMENT.......................................................................................................... 4

    A.      Legal Standard: ........................................................................................... 4

    B.      Plaintiff Cannot Sustain Actions for Violation of the Sherman Act................................. 5

        i.       The Allegations of the Amended Complaint Demonstrate that No Exclusionary

             Conduct Occurred.......................................................................................... 5

        ii.      The Allegations of the Amended Complaint Establish a Lack of Any Recoupment........ 9

    C.      Plaintiff Has Further Failed to Adequately Allege Sherman Act Violations. ..............12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                    **Page(s)**

3

*Airweld, Inc. v. Airco, Inc.*,

4
    576 F. Supp. 676 (D. Or. 1983).........................................................................6

5

*Am. Acad. Suppliers, Inc. v. Beckley-Cardy, Inc.*,
    922 F.2d 1317 (7th Cir. 1991)..........................................................................6

6

*Ashcroft v. Iqbal*,

7
    556 U.S. 662 (2009)......................................................................................4, 5

8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,

9
    113 S. Ct. 2578, 125 L. Ed. 2d 168 (1993) ...................................................9, 10

10

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962).........................................................................................10

11

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*,

12
    150 F.4th 1056 (9th Cir. 2025)..........................................................................5

13

*Dworkin v. Hustler Magazine, Inc.*,

14
    867 F.2d 1188 (9th Cir. 1989)...........................................................................4

15

*Geraci v. Homestreet Bank*,
    347 F.3d 749 (9th Cir. 2003).............................................................................4

16

*Heliotrope Gen., Inc. v. Ford Motor Co.*,

17
    189 F.3d 971 (9th Cir. 1999).............................................................................4

18

*Ind. Grocery, Inc. v. Super Valu Stores, Inc.*,

19
    864 F.2d 1409 (7th Cir. 1989)..........................................................................11

20

*Las Vegas Merchant Plumbers Ass'n v. United States*,
    210 F.2d 732 (9th Cir. 1954)...........................................................................13

21

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,

22
    551 U.S. 877, 127 S. Ct. 2705, 168 L. Ed. 2d 623 (2007) .......................................5

23

*Mandeville Island Farms, Inc., v. American Crystal Sugar Co.*,
    334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948) ................................................14

24

25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................................10, 11

26

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,

27
    407 F. Supp. 3d 1153 (D. Or. 2019) ...................................................................5

28

*Omega Env't Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) ............................................................................. 7

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
  No. SACV 12-2102, 2013 WL 3936394 (C.D. Cal. July 30, 2013) ....................... 7

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................. 10

*Roland Mach. Co. v. Dresser Indus., Inc.*
  749 F.2d 380 (7th Cir. 1984) ............................................................................... 7

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447, 113 S. Ct. 884 (1993) ............................................................. 5, 11

*Stanley v. Trs. of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006) ............................................................................. 4

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................. 5

*United Wis. Grain Producers LLC v. Archer Daniels Midland Co.*,
  144 F.4th 976 (7th Cir. 2025) ................................................................. 10, 11, 12

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ..................................... 5

*Vollrath Co. v. Sammi Corp.*,
  Case No. CV 85-820 MRP, 1989 U.S. Dist. LEXIS 16902 (C.D. Cal. Dec. 20,
  1989) .................................................................................................................. 6, 7

*Weber v. Dep't of Veterans Affairs*,
  521 F.3d 1061 (9th Cir. 2008) ............................................................................. 4

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  549 U.S. 312, 127 S. Ct. 1069, 166 L. Ed. 2d 911 (2007) ................................... 9

*William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*,
  668 F.2d 1014 (9th Cir. 1981) ......................................................................... 8, 9

**Statutes**

15 U.S.C. § 12(a) ..................................................................................................... 13

American Rescue Plan Act ..................................................................................... 2, 3

American Rescue Plan Act ......................................................................................... 8

Plaintiff Cannot Sustain Actions for Violation of the Sherman Act ............................ 5

4

Sherman Act .............................................................................................. 1, 6, 10, 12, 13, 14

Sherman Act Section 1 ......................................................................................... 1, 2, 12

Sherman Act Sections 1 and 2 ................................................................................... 12, 14

Sherman Act Section 1 and Section 2 .................................................................................. 2

Sherman Act Section 2 ......................................................................................... 1, 2, 12

Sherman Act Section 3 ............................................................................................ 12, 13

**Other Authorities**

*Covenant to Establish a Commonwealth of the Northern Mariana Islands in*
*Political Union with the United States of America* ..................................................... 13

Federal Rules of Civil Procedure Rule 12(c) ............................................................ 1, 4

Rule 8 .......................................................................................................... 5

Rule 12(b)(6) ................................................................................................... 4

Rule 12(c) and Rule 12(b)(6) ..................................................................................... 4

NOW COMES Defendant Southern Airways Express, LLC ("Southern Airways Express" or "Southern Express"), by and through its attorneys, Sean E. Frink of Marianas Legal Strategy Group, LLC, and Brian R. Zeeck and John P. Ryan of Hinshaw & Culbertson LLP, and hereby moves for judgment on the pleadings and dismissal of the claims made against Southern Airways Express due to Plaintiff Star Marianas Air, Inc.'s failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and for its Motion for Judgment on the Pleadings, states as follows:

**PROCEDURAL BACKGROUND**

On June 25, 2024, Plaintiff Star Marianas Air, Inc. ("Star Marianas" or "Plaintiff") filed its Complaint against Defendants Southern Airways Express, LLC, Marianas Pacific Express LLC d/b/a Marianas Southern Airways, and Keith Stewart, asserting causes of action against Southern Express for violation of Section 1 of the Sherman Act (Count I); violation of Section 2 of the Sherman Act (Count II). On November 21, 2024, this Court granted in part and denied in part Defendants' motion to dismiss the Complaint. On December 5, 2024, Plaintiff filed its "First Amended Complaint for Violations of the Sherman Act" (the "Amended Complaint"), again asserting causes of action against Southern Express for violations of Section 1 of the Sherman Act (Count I) and Section 2 of the Sherman Act (Count II).

On January 9, 2025, Defendants moved to dismiss the Amended Complaint, which was denied on February 13, 2025. On February 27, 2025, Southern Express filed its answer and affirmative defenses, denying the material allegations in Plaintiff's Amended Complaint and asserting affirmative defenses including failure to state a claim, immunity, application of the Single Entity Doctrine, speculative damages, failure to mitigate, lack of standing, application of the doctrine of withdraw, application of the state act doctrine, and failure to name a necessary party.

The parties are at issue on the pleadings, and have since engaged in discovery, which remains ongoing.

**ALLEGATIONS OF THE AMENDED COMPLAINT**

In its Amended Complaint, Plaintiff asserts violations of Section 1 and Section 2 of the Sherman Act against Defendants Southern Airways Express, LLC (Counts I and II); Marianas Pacific Express, LLC d/b/a Marianas Southern Airways (Counts III and IV); and Keith Stewart (Counts V and VI). As to each Count alleging violations of Section 1 of the Sherman Act, Plaintiff alleges that the Defendants "attempted to monopolize the airline industry market through a litany of anticompetitive conduct . . ." (Doc. 34, ¶¶46, 65, 104). Likewise, regarding each Count alleging violations of Section 2 of the Sherman Act, Plaintiff also alleges that Defendants "attempted to monopolize the airline industry market through a litany of anticompetitive conduct . . ." (Doc. 34, ¶¶55, 84, 124).

Plaintiff alleges that this attempted monopolization occurred because of Marianas Southern Airways' execution of "a sole source contract with the CNMI government for receipt of federal funds through the American Rescue Plan Act." (Doc. 34, ¶10). Plaintiff alleges, "Beginning August 2022 until April 2023, Marianas Southern Airways existed as the main competitor to Star Marianas in the CNMI as Star Marianas was the primary provider of commercial passenger flight travel between the islands of Saipan, Rota and Tinian." (Doc. 34, ¶16). The contract had a 2-year term, with CNMI options to renew monthly for a maximum term of 2 years, 6 months. (Doc. 34-1, p. 4, Sec. IX). Plaintiff alleges that Defendants entered into "a predatory pricing scheme . . . to fix prices below the cost in the market served by Star Marianas . . ." (Doc. 34, ¶17). Plaintiff acknowledges that the pricing scheme benefitted consumers, saving "nearly $600,000 through reduced airfares." (Doc. 34, ¶41).

2

As alleged by Plaintiff, in a letter prepared by the CNMI government justifying its award of the contract to Marianas Southern Airways, the CNMI asserted, "reasonable prices and fees would be charged by Marianas Southern Airways." (Doc. 34, ¶27). In fact, Plaintiff does not allege beyond purely conclusory allegations that Defendants ever engaged in predatory pricing, but rather alleges that "under the Flight Incentive Program, Marianas Southern Airways would offer reduced fares, as low as $99.00 from Saipan to/from Guam . . ." below the standard "cost between $229.00-$269.00 following the contract's termination." (Doc. 34, ¶27). Plaintiff alleges that the lower fare was offered in an "attempt to monopolize the CNMI's airline industry . . ." (Doc. 34, ¶27). Yet, Plaintiff does not and cannot allege that Defendants ever changed their pricing to the alleged market value after termination of the contract, let alone allege that Defendants engaged in any sort of predatory pricing following termination of the contract. Plaintiff does not even allege any intention by Defendants to do so.

In each Count, Plaintiff generally alleges that each Defendant "attempted to monopolize the airline industry market through a litany of anticompetitive conduct . . ." (See, e.g., Doc. 34, ¶46), and suggests a "conspiracy to monopolize the CNMI airline industry" among the Defendants. *Id.* Yet, nowhere within Plaintiff's Complaint does Plaintiff allege any recoupment by Defendants of these below cost prices by profiting from monopoly prices, or, put differently, higher than normal prices charged at the end of the scheme, as opposed to profits from other financial strategies. Plaintiff does not allege, for example, that once Defendants created a monopoly, they then harmed the consumer by charging higher prices in order to recover any losses for below-cost prices previously charged. Rather, Plaintiff only alleges that consumers received the benefit of lower prices, which is not a harm that antitrust law is designed to prevent.

As explained below, exclusionary conduct is a feature common to monopolization and attempted monopolization claims. Exclusionary conduct is behavior with anticompetitive effect,

meaning it reduces competition and harms consumers. Here Plaintiff does not and cannot allege

any harm to consumers, and in fact does the opposite, alleging a benefit to the consumers.

## I.    ARGUMENT

### A.    Legal Standard:

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on

the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ.

P. 12(c). "A motion for judgment on the pleadings should be granted where it appears the moving

party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751

(9th Cir. 2003); *see also Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006).

In addition to reviewing the allegations of the complaint, the court may also consider materials to

which it can take judicial notice. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981,

n.18 (9th Cir. 1999). A motion under Rule 12(c) is virtually identical to a motion under Rule

12(b)(6), and the same standard applies to both motions. *See Dworkin v. Hustler Magazine, Inc.*,

867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in

time of filing but are otherwise "functionally identical," and applying the same standard of review).

Thus, to survive a motion under Rule 12(c), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are

taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the

opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*,

652 F.3d 1202, 1216 (9th Cir. 2011). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *See Iqbal*, 556 U.S. at 679.

### B.    Plaintiff Cannot Sustain Actions for Violation of the Sherman Act.

A monopolization claim has two elements: (1) "the possession of monopoly power in the relevant market" and (2) "the willful acquisition or maintenance of that power" through exclusionary conduct. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966)). An attempted monopolization claim, which involves an unsuccessful or incomplete attempt to achieve a monopoly, has three elements: (1) specific intent to monopolize, (2) exclusionary conduct directed to accomplishing this purpose, and (3) a dangerous probability of achieving monopoly power. *Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1066 (9th Cir. 2025); *see also Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 407 F. Supp. 3d 1153, 1161-62 (D. Or. 2019)("[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884 (1993).  Plaintiff's Amended Complaint itself demonstrates that these elements cannot be met here.

### i.    The Allegations of the Amended Complaint Demonstrate that No Exclusionary Conduct Occurred.

Exclusionary conduct is a common element for both monopolization claims and attempted monopolization claims. Exclusionary conduct is behavior with anticompetitive effect, meaning it reduces competition and thereby harms consumers. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886, 127 S. Ct. 2705, 168 L. Ed. 2d 623 (2007). The Supreme Court has held in the Sherman Act context that it is not enough to inquire "whether the defendant has engaged

in 'unfair' or 'predatory' tactics"; rather, it insisted that the plaintiff prove "a dangerous probability that [the defendant] would monopolize a particular market." *Brooke Grp*., 509 U.S. at 224-225; *citing Spectrum Sports*, 506 U.S. at 459. Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or "purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Id.* (*citing Hunt v. Crumboch*, 325 U.S. 821, 826, 89 L. Ed. 1954, 65 S. Ct. 1545 (1945)).

In the monopolization context, predatory pricing unfolds in two stages: (1) a firm charges a price below its cost (i.e., the predation phase) and (2) the firm later recoups its losses by charging a monopoly price (i.e., the recoupment phase) and sustaining those prices long enough to earn in excess profits what they earlier gave up in below-cost prices. *Brooke Grp*. 509 U.S. at 225; *See also Am. Acad. Suppliers, Inc. v. Beckley-Cardy, Inc*., 922 F.2d 1317, 1320 (7th Cir. 1991).

"[T]o prove that a competitor set prices below cost, an antitrust plaintiff must calculate the *actual* costs incurred by the would-be monopolist." *Vollrath Co. v. Sammi Corp.*, Case No. CV 85-820 MRP, 1989 U.S. Dist. LEXIS 16902, at *35 (C.D. Cal. Dec. 20, 1989). Plaintiff's own allegations do not support that the predation phase ever occurred. *Airweld, Inc. v. Airco, Inc.*, 576 F. Supp. 676, 680 (D. Or. 1983)(Granting defendant's motion for judgment N.O.V. because a new entrant's prices would have been below average cost whatever it charged and a "new entrant, *in order to compete*, must be willing to wait for sales to grow in order to recoup the initial investment."). Instead, Plaintiff's allegations show that Defendant had a contract which provided payment for its reduced air rates. Therefore, the allegations do not illustrate that when considering the incentive funding, the flights were below cost.

Further, the contract had an incentive period of 6 months for its reduced airfare rates. This brief period of time defined in the contact, along with the contract being terminable at will,

demonstrates that Defendant did not engage in predatory or anticompetitive conduct. In *Vollrath Co.*, the court held that a mere five months of below cost pricing "cannot support an inference of predation." Case No. CV 85-820 MRP, 1989 U.S. Dist. LEXIS 16902, at *40 (C.D. Cal. Dec. 20, 1989)(citing *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1034 n.29 (9th Cir. 1981). Other courts have likewise held that contracts of short duration do not and cannot, as a matter of law, violate antitrust laws. *Omega Env't Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997)(Contracts of "short duration and easy terminability . . . negate substantially [exclusive agreements'] potential to foreclose competition"); *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12-2102, 2013 WL 3936394, at *2-4 (C.D. Cal. July 30, 2013)(dismissing Sherman Act claims because "short term contracts that are readily terminable do not violate the antitrust laws"); *Roland Mach. Co. v. Dresser Indus., Inc.* 749 F.2d 380, 395 (7th Cir. 1984) ("Exclusive-dealing contracts terminable in less than a year are presumptively lawful.").

Here, the Contract carried a maximum two-year term  (Am. Cmplt., Ex. A, p. 3, §IX). However, Section 7 of the Terms and Conditions of the Contract only guaranteed the contract for the fiscal year. (Am. Cmplt., Ex. A, Terms and Conditions, §7). Accordingly, the Contract was only guaranteed through the end of October, 2022, limiting the initial term in reality to less than a year. Significantly also, is the fact that this Contract was terminable at will at any time, "in whole or in part for the convenience of the Commonwealth."(Am. Cmplt., Ex. A, Terms and Conditions, §22(a)). And, in fact, the contract was terminated by the CNMI for its convenience, and any alleged competition Marianas Southern Airways, LLC created was eliminated seven months after flight commencement, as acknowledged by Plaintiff. (Am. Cmplt., ¶16).

Further, "[p]ricing is predatory if its benefits depend on its anticipated tendency to eliminate competition." *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1034 n.29 (9th Cir. 1981). In this case the pricing is based on a contract with the CNMI government. The

purpose of that contract was to increase competition and not eliminate it. By entering into the Contract for Purchase of Service – Airline Incentive Agreement ("Agreement"), the CNMI made clear what the purpose of the Agreement was. Section IV, entitled General Purpose, sets forth the clearly articulated and affirmatively expressed policy of the CNMI in establishing pricing for flights between the Mariana Islands. It reads as follows:

> The purpose of this contract is for the Commonwealth to procure from the Contractor the services described in this contract and in the attached exhibits and to enjoy any warranty or other goods provided for by this contract. The services being procured are described as follows:
>
> Tourism is a vital part of the economy of the CNMI, however, the COVID-19 pandemic severely curtailed tourism to the CNMI from outside the CNMI and also reduced inter-island travel within the CNMI. The federal government, through the American Rescue Plan Act ("ARPA"), U.S. P.L. 117-2, subtitle M, section 602(c), provided funds to the CNMI whereby the CNMI could, in turn, provide funding to maintain or revive tourism and tourism related activities in the CNMI.
>
> The purpose of this contract is to establish an incentive framework between the Commonwealth and the Contractor whereby the Contractor would be incentivized to provide inter-island passenger and cargo service in the Marianas Islands. This incentive framework will take the form of an Initial Incentive Fund, a Flight Incentive Program, and Government Related Pricing.
>
> The services being purchased by this contract and the incentive framework are further described in Exhibit B and C. If the description of the services in Exhibit B and C conflict with the description of services in this contract, then the description in this contract will control.
> *See* Dkt. 34-1 at pp. 1-2.

The First Amended Complaint does not and cannot allege that predation occurred, and its own exhibits contradict the notion. The exhibits illustrate that there was no anticipated tendency to eliminate competition, but instead the lower prices were a government lead initiative to increase tourism. Plaintiff's failure to establish predation defeats its claim. The lack of predation is bolstered by Plaintiff acting as a monopoly in the CNMI market prior to Defendant's alleged entrance to the market. *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1030-31 (9th Cir. 1981)("conduct that will support a claim of attempted monopolization must be such that its

anticipated benefits were dependent upon its tendency to discipline or eliminate competition and thereby enhance the firm's long-term ability to reap the benefits of monopoly power. Such conduct is not true competition; it makes sense only because it eliminates competition.").

> **ii.      The Allegations of the Amended Complaint Establish a Lack of Any Recoupment.**

"Recoupment" in a predatory pricing scheme means profiting off monopoly prices charged at the end of the scheme—in other words, "charging higher prices to consumers." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co*., 549 U.S. 312, 324, 127 S. Ct. 1069, 166 L. Ed. 2d 911 (2007) (emphasis added).

To determine whether a plaintiff sufficiently alleges recoupment, we ask whether the plaintiff identifies profits that flow from monopoly prices—not profits that flow from other financial maneuvers and strategies made possible by completing the initial step of charging below-cost prices. The Supreme Court has said as much before:

> [A] firm engaged in a predatory-pricing scheme makes an investment—the losses suffered plus the profits that would have been realized absent the scheme—at the initial, below-cost-selling phase. For that investment to be rational, a firm must reasonably expect to recoup in the long run at least its original investment with supracompetitive profits .... Recognizing the centrality of recoupment to a predatory-pricing scheme, we require[] predatory-pricing plaintiffs to demonstrate that there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation ....

*Id*. at 318-20 (cleaned) (emphasis added). In a separate decision, *Brooke Group*, the Supreme Court further explained: "In order to recoup their losses, predators must obtain enough market power to set higher than competitive prices, and then must sustain those prices long enough to earn in excess profits what they earlier gave up in below-cost prices." 509 U.S. at 225-26 (emphases added) (cleaned); *see also A.A. Poultry,* 881 F.2d at 1401 ("If the [predatory pricing] attempt fails, ... the aggressor .... surrenders the profits it could have made by charging the higher market price." (emphasis added)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986)

("there is a consensus among commentators that predatory pricing schemes are rarely tried, and even more rarely successful.").

It is axiomatic that the antitrust laws were passed for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). "[A]ntitrust laws are designed to benefit consumers; how [Defendant] manages to profit from below-cost prices in ways that do not harm consumers does not matter." *United Wis. Grain Producers LLC v. Archer Daniels Midland Co.*, 144 F.4th 976, 982 (7th Cir. 2025); citing *A.A. Poultry*, 881 F.2d at 1400. The recoupment requirement ensures that any antitrust claim based on low prices involves harm to consumers through eventual high prices. "Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced." *Brooke Grp.*, 509 U.S. at 224. And when low prices today do not precede soaring prices tomorrow, consumers receive the "boon" of lower prices (even if competitors must brave the curse of the same). *United Wis. Grain Producers,* 144 F.4[th] 982, citing *Brooke Grp.*, 509 U.S. at 224

"Of course, conduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). "Accordingly, an act is deemed anticompetitive under the Sherman Act only when it harms both allocative efficiency and raises the prices of goods above competitive levels or diminishes their quality." *Id.* (citing Cf. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 113 S. Ct. 2578, 2588, 125 L. Ed. 2d 168 (1993) (below-cost pricing is not anticompetitive in itself because, although it causes allocative inefficiency, it brings lower aggregate prices in the market); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)("cutting prices in order to increase business often is the very essence of competition"). Accordingly, monopolization claims and attempted monopolization claims both require an allegation of "exclusionary conduct"-that a defendant in an Anti-Trust case

completed its predatory pricing scheme by charging monopoly prices, or higher prices that harm the consumer, in order to recoup its losses from below-cost process. In order "to establish a monopolization claim premised on predatory pricing, [Plaintiff] must allege that [Defendant] recouped its investment in the predatory pricing scheme and that it did so by charging monopoly prices." *United Wis. Grain Producers LLC v. Archer Daniels Midland Co.*, 144 F.4th at 982. Simply put, not only is such an allegation absent here, but it is an impossible one to make, as demonstrated by Plaintiff's own allegations. As in *United Wis. Grain Producers*, "the failure to allege recoupment by way of higher prices dooms [Plaintiff's] monopolization claim." *Id.* At 981.

Here, at best, Plaintiff has alleged that Defendants have otherwise made a profit by virtue of a contract with the CNMI government which provided Marianas Southern with $1.5 million in funding "for the purpose of mitigating start-up costs for the airline." (Doc. 34, ¶30). Accordingly, Defendants did not recoup their costs, nor seek to recoup their costs, through any predatory pricing. To the extent that any costs were, in fact, recouped (which Plaintiff does not actually allege), such recoupment came from some other source. Plaintiff does not and cannot allege any recoupment via monopoly prices nor a dangerous probability of recoupment via monopoly prices. See *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993); see also *Ind. Grocery, Inc. v. Super Valu Stores, Inc*., 864 F.2d 1409, 1413 (7th Cir. 1989).

As the Seventh Circuit stated in *United Wi. Grain Producers*, "[u]ltimately, antitrust law cannot regulate below-cost prices that do not eventually morph into monopoly prices without stirring up the "'intolerable risks of chilling legitimate' procompetitive conduct." 144 F.4th at 983, citing *Weyerhaeuser*, 549 U.S. at 325 (*quoting Brooke Grp*., 509 U.S. at 223). As in that case, Plaintiff here failed to plead recoupment by way of monopoly prices. To let Plaintiff's case go forward under these circumstances would be contradictory to the purpose of the Sherman Act. As the Supreme Court noted, "[i]t would be ironic indeed if the standards for predatory pricing liability

were so low that antitrust suits themselves became a tool for keeping prices high." *Brooke Grp.*, 509 U.S. at 226-227. That is what Plaintiff is attempting to do here, and, respectfully, for the reasons stated above, judgment on the pleadings in Southern Airways Express's favor is appropriate.

### C.     Plaintiff Has Further Failed to Adequately Allege Sherman Act Violations.

In Counts I and II of the Amended Complaint Plaintiff asserts causes of action against Southern Airways Express for alleged violations of Sections 1 and 2 of the Sherman Act. Section 1 of the Sherman Act prohibits contracts in restraint of trade or commerce, and Section 2 of the Sherman Act prohibits monopolization of trade or commerce, "…**among the several States, or with foreign nations**..." (Emphasis added). Section 3 of the Sherman Act prohibits such alleged antitrust behavior "…**in any territory** of the United States or of the District of Columbia…" (Emphasis added). However, Plaintiff does not allege any violation of Section 3 of the Sherman Act. This is reason alone to enter judgment on the pleadings for Southern Airways Express.

Beyond the obvious defect in Plaintiff's Amended Complaint that the Commonwealth of the Northern Mariana Islands is not a Sherman Act Section 1 or 2 "state" or "foreign nation", and instead a Sherman Act Section 3 "territory of the United States",[1] the Amended Complaint fails to allege that Southern Airways Express's conduct had a substantial qualitative effect on *interstate* commerce, an allegation necessary to defeat this motion for judgment on the pleadings.

---

[1] Setting aside the ongoing debate as to whether the Commonwealth of the Northern Mariana Islands is indeed to be considered a "territory" under the law, Congress made clear its intention that the Sherman Act apply broadly as to United States' entities:

"'Commerce,' as used herein, means trade or commerce among the several States and with foreign nations, or between the District of Columbia or any Territory of the United States and any State, Territory, or foreign nation, or between any insular possessions or other places under the jurisdiction of the United States, or between any such possession or place and any State or Territory of the United States or the District of Columbia or any foreign nation, or within the District of Columbia or any Territory or any insular possession or other place under the jurisdiction of the United States: Provided, That nothing in this Act contained shall apply to the Philippine Islands." 15 U.S.C. § 12(a).

Section 502(a)(2) of the *Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America* (the "Covenant") extends application to the CNMI of those federal laws, like the Sherman Act, enacted before January 9, 1978, that are both applicable to Guam and "of general application to the several States." But, Section 502(a)(2) also makes clear that such laws are applicable in the CNMI only "as they are applicable to the several States."

Which means, unlike Congress' "plenary" authority to regulate commerce within and without other United States "territories", as Section 3 of the Sherman Act does, the application of Section 3 of the Sherman Act to CNMI activities is limited as it is to each of the several States, "to transactions in the stream of interstate commerce, but also to intrastate transactions which substantially affect interstate commerce. *Las Vegas Merchant Plumbers Ass'n v. United States,* 210 F.2d 732, 739-740 (9th Cir. 1954)(citing *U.S. v. Chrysler Corp. Parts Wholesalers*, 180 F.2d 557, 560 (9th Cir. 1950); *Mandeville Island Farms, Inc., v. American Crystal Sugar Co.,* 334 U.S. 219, 235, 68 S.Ct. 996, 92 L. Ed. 1328 (1948).

Plaintiff's Amended Complaint is devoid of allegations attempting to address this jurisdictional limitation as to Southern Airways Express. Instead, Plaintiff only makes the following identical CNMI-only intrastate commerce allegations in the two counts of Plaintiff's Complaint applicable to Southern Airways Express, Counts I and II: "Specifically, Southern Airways Express substantially affected interisland travel **in the CNMI**, directly causing disruption and unreasonable restraint on trade within the flow of commerce." Amended Complaint, ¶¶51 and 61. (Emphasis added).[2]

---

[2] It is likely that this is because another airline, United Airlines, served the Guam-Saipan-Guam route at all relevant times.

13

Because Sections 1 and 2 of the Sherman Act do not apply to the CNMI and because Plaintiff has failed to provide allegations of interstate activities in the stream of commerce or intrastate activities which substantially affect interstate commerce against Southern Airways Express under Sections 1, 2, or 3 of the Sherman Act, judgment on the pleadings in favor of Southern Airways Express should be granted for these additional reasons.

Respectfully, for the reasons set for in this memorandum, Defendant Southern Airways Express, Inc. requests that this Court grant the motion for judgment on the pleadings and enter judgment in favor of Defendant Southern Airways Express, Inc., and for such further relief as this Court deems just.

Respectfully submitted,

DATED: December 17 , 2025          MARIANAS LEGAL STRATEGY GROUP, LLC


_____/s/ Sean E. Frink_____
Sean E. Frink

HINSHAW & CULBERTSON LLP


_____/s/ Brian R. Zeeck_____
Brian R. Zeeck (*Pro Hac Vice*)
John P. Ryan (*Pro Hac Vice*)

Attorneys for Defendant
Southern Airways Express, LLC